

*hmg 5.7.25*

ADE/MP: USAO#2025R00239

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **CRIMINAL NO.** ABA-25-143 |
| | * | |
| **PATRICK TORMAY BRITTON-** | * | **(Wire Fraud, 18 U.S.C. § 1343;** |
| **HARR,** | * | **Forfeiture 18 U.S.C. § 981(a)(1)(C);** |
| | * | **21 U.S.C. § 853(p); 28 U.S.C.** |
| **Defendant.** | * | **§ 2461(c))** |
| | * | |

## INDICTMENT

### COUNTS ONE THROUGH SIX
### Wire Fraud

The Grand Jury for the District of Maryland charges that:

### Introduction

At all times material to the Indictment:

1.      Defendant **PATRICK TORMAY BRITTON-HARR ("BRITTON-HARR")** lived in Maryland and Florida.  **BRITTON-HARR** owned AeroVanti, Inc., and its affiliated entities including, but not limited to, AeroVanti Aircraft, LLC., AeroVanti Aviation, LLC, AeroVanti Yacht Club, LLC., and AeroVanti Brokerage, LLC. (collectively "**AeroVanti**").  From at least 2021 through approximately April 2023, **BRITTON-HARR** was **AeroVanti's** Chief Executive Officer.

2.      **AeroVanti** was a private membership-based club that offered on-demand flights for the benefit of its members aboard aircraft that **AeroVanti** owned or leased.  **AeroVanti's** principal place of business was in Annapolis, Maryland, and its flight operations were based out of Sarasota, Florida.

3.      **BRITTON-HARR** controlled other entities including, but not limited to, holding companies, which **BRITTON-HARR** used to, among other things, own assets, such as boats, and lease real estate.

### The TOP GUN LLCs

4.      From approximately November 2021 through January 2022, **BRITTON-HARR**, acting on behalf of **AeroVanti**, entered into lease-purchase agreements for five Piaggio-manufactured aircraft bearing Federal Aviation Administration ("FAA") tail numbers N2444Z, N290BC, N111VR, N189LW, and N1037W.

5.      Beginning in approximately March 2022, **BRITTON-HARR** created a class of **AeroVanti** customers known as "Top Gun" members. This new group of "Top Gun" members agreed to pay approximately $150,000 in exchange for certain benefits, including 100 pre-paid flight hours.

6.      Top Gun members were organized into five limited liability companies ("LLCs") of approximately twenty individual members, or "unitholders," per LLC. Each LLC was created to finance AeroVanti's debt-free purchase of one of the five aircraft identified in Paragraph 4 of this Indictment on **AeroVanti's** behalf. Each LLC was named according to the FAA tail number of the aircraft it was created to purchase. The LLCs were each registered in Maryland between approximately March 2022 and August 2022 and were named as follows: 44Z, LLC; 90BC, LLC; N189LW, LLC; N111VR, LLC; and N1037W, LLC. The registered agent for each LLC was a Top Gun unitholder known hereafter as Individual-1.

### The Member Agreements

7.      Each unitholder executed a "Membership Agreement and Flight Services Agreement" with **AeroVanti.** Each LLC, or "Member," along with the individual unitholders, also executed an "Addendum

to Aerovanti Member Agreement for Purchase of Block Time Flight Hours." Together, these agreements were called "the Member Agreement."

8.     Each unitholder's payment was held in escrow on behalf of the LLC by an agent located in Oklahoma. This money could be disbursed to **AeroVanti** only for the reasons set forth in Paragraph 1.d of the Member Agreement. The primary justification for disbursal of unitholder funds under Paragraph 1.d was to "acquire and recondition a [specifically designated aircraft] to meet AeroVanti fleet standards and conformity with Part 135 requirements[.]"

9.     The Member Agreement provided the unitholders security for their pre-paid flight hours by requiring **AeroVanti** to "endorse in blank and deliver to the escrow agent the title to the [specifically designated aircraft]. The purpose of this procedure is to ensure that AeroVanti maintains insurance and other obligations affecting the airplane and maintains the aircraft in accordance with Part 135 of the Federal Aviation Administration regulations." **AeroVanti** further agreed that should it "fail to insure and maintain the [specifically designated aircraft as required by Part 135, or otherwise materially defaults on its obligations, then Member may declare default[.]" **AeroVanti** further agreed that if it failed to cure the default, "then Member may require the escrow agent to deliver to member the aircraft title documentation as set forth in the escrow agreement."

10.     **BRITTON-HARR** executed each Member Agreement on behalf of **AeroVanti**. Individual-1 executed each Member Agreement on behalf of the LLCs.

11.     According to the Member Agreement, Individual-1 was required to approve each disbursal from the escrow account to **AeroVanti**. Individual-1 and **BRITTON-HARR** digitally signed disbursal instructions they received from the escrow agent. Each instruction listed the amount of money authorized for disbursal, the amount of remaining LLC funds held in escrow, and that the disbursal was done in

accordance with Paragraph 1.d of the Member Agreement. At times, **BRITTON-HARR** and Individual-1 digitally signed these disbursal instructions within the District of Maryland.

### Scheme and Artifice To Defraud

12.     From at least November 2021 through at least October 2023, in District of Maryland, and elsewhere, the defendant,

### PATRICK TORMAY BRITTON-HARR,

knowingly devised and intended to devise a scheme and artifice to defraud Top Gun unitholders, to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and transmitted and caused to be transmitted by means of wire communications in interstate commerce, writings, signals, pictures and sounds for purpose of executing such scheme and artifice to defraud.

### Purposes of the Scheme

13.     A purpose of the scheme to defraud was for **BRITTON-HARR** to fraudulently obtain funds from Top Gun unitholders that were placed into escrow on the belief that their funds would be used in a manner consistent with the Member Agreements so that **BRITTON-HARR** could divert those funds for unauthorized and undisclosed purposes, including his own personal benefit.

### Manner and Means

14.     To further this scheme, and to accomplish its purposes, **BRITTON-HARR** used the followings methods, manners, and means:

15.     It was part of the scheme to defraud that **BRITTON-HARR** used email, text messages, and telephone calls to promote **AeroVanti** and to communicate with members, potential members, investors, lenders, and others.

16.     It was further part of the scheme to defraud that **BRITTON-HARR** caused Individual-1 and a second individual, known as Individual-2, to recruit members into **AeroVanti**'s Top Gun program

4

through material misrepresentations and omissions of material facts. Specifically, **BRITTON-HARR** misled Individual-1 and Individual-2 into falsely believing that Top Gun members' money would be used to purchase specific aircraft, and that the LLCs, into which they and their money would be organized, would temporarily hold title to the aircraft as security for their pre-payment of flight hours. **BRITTON-HARR** then caused Individual-1 and Individual-2 to recruit potential Top Gun members based on this false belief.

17.    For example, on or about February 24, 2022, **BRITTON-HARR** sent an email to Individual-1 and Individual-2 regarding the establishment of the new Top Gun member program:

> Good morning, I agree an escrow arrangement where funds are fully collected and held for each aircraft acquisition group is best. Funds can be released at time of closing and lien being filed … In the meantime, please [l]et me know your initial thoughts on this structure below …
>
> 1) Establish LLC (~20 Member Units) & Draft Owner addendum to LLC Member Agreement
> 2) Each Member Unit = 100hrs @ $1500hr ($150,000 Block purchase *~20 = $3MM)
> 3) Set up and fund Escrow
> 4) AeroVanti identify aircraft & purchase aircraft
> 5) Place LLC Lien on aircraft at closing
> 6) Issue Stock Warrant at Closing to LLC
> 7) Start Flying

18.    At times, **BRITTON-HARR** made material misrepresentations to Top Gun members by claiming he was executing a "rolling close" to purchase and obtain title to aircraft. For example, on or about March 30, 2022, **BRITTON-HARR** sent an email to Individual-1 and Individual-2 in which **BRITTON-HARR** falsely stated:

> I spoke with the seller and with the current list of participating members for 44Z, the amount ($825k) of deposits will allow for the title to be released and we can close. We can then allow for a rolling close for the additional participating members to join but this way we have secured the aircraft.

19.     It was further part of the scheme to defraud that **BRITTON-HARR** caused Individual-1 to form LLCs in Maryland.  These LLCs were intended to organize the Top Gun members, obtain their initial "unitholder" deposits of $150,000, and to temporarily hold title to the aircraft they were created to purchase.

20.     It was further part of the scheme to defraud that **BRITTON-HARR** caused the escrow agent to prepare disbursal instructions to authorize the release of Top Gun unitholder funds to **AeroVanti**.

21.     It was further part of the scheme to defraud that **BRITTON-HARR** caused Individual-1 to authorize the disbursal of Top Gun unitholder funds from the escrow account by falsely representing, and by misleading Individual-1 into falsely believing, that the money would be used to purchase, refurbish, and obtain title to specific aircraft, and by concealing his intent to divert the funds for unauthorized and undisclosed purposes.  Among other things, **BRITTON-HARR** falsely certified that disbursals of unitholder funds were consistent with the Member Agreement and, when communicating with Individual-1 and other Top Gun unitholders, **BRITTON-HARR** omitted his intent to use unitholder funds for undisclosed and unauthorized purposes.

22.     **BRITTON-HARR** caused disbursals from the escrow account by falsely representing to Individual-1 that the money would be used to purchase, refurbish, and acquire title to the aircraft described in the disbursal instructions.  In truth and in fact, **BRITTON-HARR** did not use any of the money he caused to be disbursed to purchase the relevant aircraft, nor did **BRITTON-HARR** cause title to those aircraft to be held in escrow as the Member Agreement required.   Instead, **BRITTON-HARR** misappropriated the Top Gun unitholder funds for undisclosed and unauthorized purposes, including his own personal use.

23.     It was further part of the scheme to defraud that between approximately April 2022 and October 2022, **BRITTON-HARR** caused approximately twenty eight disbursals of escrowed Top Gun

unitholder funds—totaling approximately $14,750,000—to bank accounts belonging to **AeroVanti** that **BRITTON-HARR** controlled. Among these were checking accounts at Bank-1 ending in x4642 ( "the x4642 account") and x0104 ( "the x0104" account").

24.     It was further part of the scheme to defraud that **BRITTON-HARR** concealed and attempted to conceal the scheme by limiting access to **AeroVanti's** checking accounts.

25.     It was further part of the scheme to defraud that **BRITTON-HARR** fraudulently transferred Top Gun unitholder funds from bank accounts belonging to **AeroVanti** to his personal bank accounts and those of his wife, T.D. Among his personal bank accounts was a checking account at Bank-2 ending in x5923 ("the x5923 account"). Among T.D.'s personal bank accounts was a checking account at Bank-3 ending in x1153 ("the x1153 account").

26.     It was further part of the scheme to defraud that **BRITTON-HARR** obtained and used Top Gun member funds for unauthorized and undisclosed purposes, including his own personal use. These uses included, but were not limited to, paying for living expenses, purchasing boats, purchasing jewelry, and paying rent. For example:

    a.  On or about April 21, 2022, **BRITTON-HARR** misappropriated Top Gun unitholder funds by wiring $100,000 from the x4642 account to the x1153 account.

    b.  On or about May 27, 2022, **BRITTON-HARR** misappropriated Top Gun unitholders funds by wiring $100,000 from the x4642 account to the x5923 account. **BRITTON-HARR** spent approximately $65,000 of this money at a jewelry store in Pensacola, Florida.

    c.  Between approximately June and August of 2022, **BRITTON-HARR** misappropriated approximately $125,000 of Top Gun unitholder funds to purchase a boat known as "the Permit." **BRITTON-HARR** accomplished this by wiring Top Gun unitholder funds from the x4642 account and the x0104 account to the x5923 account.

d.  In and around August and September 2022, **BRITTON-HARR** misappropriated approximately $80,000 of Top Gun unitholder funds to purchase a boat. **BRITTON-HARR** accomplished this by wiring Top Gun unitholder funds from the x4642 account to the x5923 account and issuing a check for $80,000 from the x5923 account.

e.  In and around September 2022, **BRITTON-HARR** misappropriated approximately $306,000 of Top Gun unitholder funds to purchase a yacht known as "the Triple Lindy." **BRITTON-HARR** accomplished this by wiring approximately $1,000,000 of Top Gun unitholder funds from the x4642 account to the x0104 account and using a portion of those funds to purchase the Triple Lindy.

f.  In and around October 11, 2022, **BRITTON-HARR** misappropriated approximately $30,000 of Top Gun unitholder funds to pay rent for a property in and around Tampa, Florida.

27.     It was further part of the scheme to defraud that in and around November 2022, **BRITTON-HARR** invited Top Gun unitholders to visit Sarasota, Florida after he learned that an email concerning **BRITTON-HARR'S** misappropriation of unitholder funds and mismanagement of **AeroVanti** was sent to Top Gun unitholders.

28.     It was further part of the scheme to defraud that **BRITTON-HARR** attempted to conceal his scheme by borrowing additional funds to purchase aircraft that he already falsely claimed to have purchased with Top Gun unitholder funds. Specifically, in and around April 2023, **BRITTON-HARR** fraudulently obtained a loan of approximately $1,500,000 from a group of **AeroVanti** investors ("Lender Group-1"). **BRITTON-HARR** represented that he would use this loan to purchase the aircraft known as N290BC. **BRITTON-HARR** misled Lender Group-1 into providing this loan by, among other means,

concealing and omitting the existence of 90BC, LLC and the fact that **AeroVanti** had been sued by N290BC's owner for re-possession of the aircraft's logbooks and records.

**Execution Of The Scheme To Defraud**

29.    On or about the dates specified below as to each count, in the District of Maryland, and elsewhere,

**PATRICK TORMAY BRITTON-HARR,**

the defendant herein, for the purpose of executing and attempting to execute the aforesaid scheme and artifice to defraud, did knowingly transmit and cause to be transmitted in interstate commerce by means of a wire communication, certain signals, signs and sounds, as set forth below:

| COUNT | APPROXIMATE DATE | DESCRIPTION OF INTERSTATE WIRE |
|---|---|---|
| 1 | April 5, 2022 | Transmission of Disbursal Instruction for approximately $675,000 from 44Z, LLC from Oklahoma to Individual-1 in Maryland |
| 2 | May 27, 2022 | Transmission of Disbursal Instruction for approximately $1,650,000 from 90BC, LLC from Oklahoma to **BRITTON-HARR** in Maryland |
| 3 | June 23, 2022 | Transmission of Disbursal Instruction for approximately $825,000 for N189LW, LLC from Oklahoma to **BRITTON-HARR** in Maryland |
| 4 | August 26, 2022 | Transmission of Disbursal Instruction for approximately $1,275,000 for N111VR, LLC from Oklahoma to **BRITTON-HARR** in Maryland |
| 5 | September 15, 2022 | Transmission of Disbursal Instruction for approximately $450,000 from N111VR, LLC from Oklahoma to Individual-1 in Maryland |
| 6 | September 15, 2022 | Transmission of Disbursal Instruction for approximately $950,000 from N1037W, LLC from Oklahoma to Individual-1 in Maryland |

18 U.S.C. § 1343

## FORFEITURE ALLEGATION

The Grand Jury for the District of Maryland further finds that:

1.      Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c), as a result of the defendant's conviction under the offenses in Counts One through Six of this Indictment.

### Wire Fraud Forfeiture

2.      Upon conviction of the offenses in Counts One through Six of this Indictment, the defendant,

### PATRICK TORMAY BRITTON-HARR,

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the scheme to defraud.

3.      The property to be forfeited includes, but is not limited to, a money judgment in the amount of at least $16,250,000.

### Substitute Assets

4.      If any of the property described above, as a result of any act or omission of the defendant:

   a.      cannot be located upon the exercise of due diligence;

   b.      has been transferred or sold to, or deposited with, a third party;

   c.      has been placed beyond the jurisdiction of the court;

   d.      has been substantially diminished in value; or

   e.      has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as

incorporated by 28 U.S.C. § 2461(c).

18 U.S.C. § 981(a)(1)(C)
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)

Kelly O. Hayes
United States Attorney

LORINDA I. LARYEA
CHIEF, FRAUD SECTION

DAVID A. PETERS
Trial Attorney, Fraud Section
Department of Justice
1400 New York Ave., N.W.
Washington, DC 20005
Phone: (202) 616-5420
Email: David.Peters2@usdoj.gov

A TRUE BILL:

**SIGNATURE REDACTED**
Foreperson

5/8/2025
Date

11