IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Crim. No. ABA-25-143 |
| | * | |
| PATRICK BRITTON-HARR, | * | |
| | * | |
| Defendant. | * | |
| | ****** | |

GOVERNMENT'S OMNIBUS MOTION FOR
*IN LIMINE* RULINGS FROM THE COURT

In advance of the May 18, 2026 trial against Defendant Patrick Britton-Harr ("Britton-Harr" or the "Defendant"), the United States of America respectfully seeks the following *in limine* rulings from the Court:

1. To preclude the Defendant from introducing evidence and argument concerning alleged negligence or mismanagement by the victims, including "Top Gun" unitholders William LeBlanc and William Morris;

2. To preclude evidence and argument regarding charging decisions or selective prosecution of the Defendant;

3. To preclude the Defendant from introducing purportedly self-exculpatory statements without testifying; and

4. To require that the Defendant provide notice if he intends to raise an "advice of counsel" defense and present an offer of proof concerning the elements of the defense before presenting argument or evidence on that subject before the jury.

## BACKGROUND

On May 8, 2025, a grand jury sitting in the U.S. District Court for the District of Maryland returned two separate indictments against Defendant Britton-Harr. In the above-captioned case, which is proceeding to trial in May 2026, Britton-Harr was charged with violating 18 U.S.C. § 1343 for engaging in a wire fraud scheme from approximately November 2021 through approximately October 2023. *See* Indictment, ECF No. 1, 25-cr-143-ABA.

-1-

The evidence at trial will demonstrate that Britton-Harr started AeroVanti, Inc. in 2021, and was CEO of the company and its affiliated entities during the relevant time period.  Between late 2021 and January 2022, Britton-Harr signed lease-purchase agreements on behalf of AeroVanti for five Piaggio Avanti P-180 aircraft with Federal Aviation Administration (FAA) tail numbers 1) N2444Z, 2) N290BC, 3) N111VR, 4) N189LW, and 5) N1037W.

In November 2021, businessmen William Morris and William LeBlanc began communicating with Britton-Harr about becoming AeroVanti members.  In a February 29, 2022 email, Britton-Harr invited Morris and LeBlanc to purchase two Piaggio aircraft— tail numbers N111VR and N189LW—to lease back to AeroVanti.  As noted above, those two aircraft were already being leased at the time by AeroVanti.  LeBlanc and Morris rejected the proposal, but offered to help recruit their friends and family to become AeroVanti "Top Gun" members.   In a February 21, 2022, Morris wrote to Britton-Harr, "I'm wondering … what if we helped YOU purchase the planes by raising block time purchases that could be secured against the airplanes?"

LeBlanc, Morris, and Britton-Harr then worked to develop an arrangement in which those newly recruited "Top Gun" members would buy block time purchases of private jet usage that would be used by AeroVanti to purchase aircraft debt-free.  Each new member would be organized into an LLC of approximately 20 individuals/unitholders.  The new members would each provide an upfront payment of $150,000 that would be held in escrow by Gilchrist Aviation Law, based in Oklahoma.  Those escrowed funds would be used by AeroVanti to purchase and refurbish the specified Piaggio associated with each of the LLCs.

In a February 24, 2022, email to Morris, LeBlanc, and others, Britton-Harr outlined the broad contours of the agreement.  He wrote:

> I agree an escrow arrangement where funds are fully collected and held for each aircraft acquisition group is best.  **Funds can be released at time of**

**closing and lien being filed**.  I had a quick back and forth with our attorney Steve Leitess and got him spooled up.  We are going to chat this morning and respond accordingly with a more formal draft.

Britton-Harr then summarized in the email the required steps to execute the plan:

1) Establish LLC (~20 Member Units) & Draft Owner Addendum to LLC Member Agreement
2) Each Member Unit = 100hrs @ $1500hr ($150,000 Block purchase *~10 = $3MM)
3) Set up and fund Escrow
4) AeroVanti identify aircraft & **purchase aircraft**
5) **Place LLC Lien on aircraft at closing**
6) Issue Stock Warrant at Closing to LLC
7) Start Flying

(emphases added)

That arrangement was memorialized in an addendum agreement to the "AeroVanti Membership Agreement" signed by Britton-Harr and the new Top Gun members.  The addendum agreement spelled out in Paragraph 1(d) the limited uses of the escrowed funds, specifically that "AeroVanti shall utilize the escrowed funds to acquire and recondition a Piaggio P.180 Avanti aircraft [aircraft intended to be purchased with the specific LLC escrowed funds] to meet AeroVanti fleet standards and conformity with Part 135 requirements, and to pay for Member's and Unitholders' use of aircraft."  The agreement went on to describe that the funds could only be released from escrow once the escrow agent was provided with "written certification, approved by Member [LeBlanc], that it has entered into an aircraft purchase agreement for the Aircraft, whereupon the market value of the Aircraft [] shall be released to AeroVanti."

The agreement also detailed AeroVanti's obligation to acquire "title"[1] to the aircraft and

---

[1] Unlike in the context of real estate ownership or other forms of property ownership (e.g. an automobile), aircraft ownership is not reflected through a "title" document as its understood in the colloquial sense.  Rather, ownership of an aircraft is memorialized through a registration document with the Federal Aviation Administration.  Despite using the wrong term, the communications and

deliver it to the escrow agent, and that should AeroVanti default on the agreement, the aircraft "title" would be delivered to the members.  The government anticipates that multiple witnesses will testify at trial that a key feature of the agreement was that "title" for the aircraft would be held with the escrow agent as security for their substantial investment.

Between March 30, 2022 and August 26, 2022, LeBlanc established five LLCs to organize members and purchase aircraft.  The names of the five LLCs were the tail numbers of five Piaggio aircraft that AeroVanti already leased subject to lease-purchase agreements entered into by Britton-Harr between November 2021 and January 2022.  Beginning in March 2022, new "Top Gun" members signed the "Top Gun" membership agreement, the membership addendum, and wired funds to Gilchrist Aviation Law to be held in escrow.   LeBlanc was the registered agent of each of the five LLCs.  As the registered agent, he was responsible for signing off on each of the escrow disbursements requested by Britton-Harr.

Between April 5, 2022, and October 24, 2022, Britton-Harr cleared out the escrow account for the five LLCs.  Britton-Harr caused 28 disbursals of funds from the escrow account, totaling approximately $14,750,000, by lying to LeBlanc, and others, that the funds were needed to purchase the aircraft listed in the disbursal instructions.  Each disbursal instruction was sent from Gilchrist Aviation Law to Britton-Harr and LeBlanc for execution.  By signing the instruction, Britton-Harr fraudulently certified that "the Disbursement Amount is in compliance with section 1.d of the Member Agreement."

The government will prove at trial that none of the money that Britton-Harr caused to be disbursed was used to purchase, obtain "title" to, or refurbish any of the aircraft referenced in the

--------

addendum agreement make clear that Britton-Harr, LeBlanc, Morris, and others were referring to a document reflecting ownership of the plane.

disbursal instructions.  Indeed, three of the Piaggio aircraft—tail numbers N189LW, N111VR, and N1037W—were never purchased by AeroVanti or Britton-Harr despite the disbursal of millions of dollars of escrowed funds to Britton-Harr.   And the other two Piaggios identified for purchase with the escrowed funds— N2444Z and 90BC—were only bought by AeroVanti months after the earmarked escrow funds had already been disbursed.

Instead of spending the money as required and as he represented, Britton-Harr misappropriated the approximately $15 million in escrowed funds for undisclosed and unauthorized purposes, including to buy yachts, pay for luxury properties, and buy jewelry, among other unauthorized expenditures, as outlined in the indictment.

**<u>LEGAL STANDARD</u>**

"A motion *in limine* is a request for guidance by the court regarding an evidentiary question." *Hunt Valley Baptist Church, Inc. v. Baltimore Cty., Maryland*, No. CV ELH-17-804, 2018 WL 2717834, at *7 (D. Md. June 6, 2018) (quoting *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983)).  Typically, pretrial motions *in limine* seek to exclude prejudicial evidence before it is offered at trial.  *See Changzhou Kaidi Elec. Co., Ltd. v. Okin Am., Inc.*, 102 F. Supp. 3d 740, 745 (D. Md. 2015) (quoting *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984)).  These motions help to streamline a case by allowing the Court to avoid "lengthy argument at, or interruption of, the trial."  *Banque Hypothecaire Du Canton De Geneve v. Union Mines, Inc.*, 652 F. Supp. 1400, 1401 (D. Md. 1987); *see also Changzhou Kaidi*, 102 F. Supp. 3d at 745 ("[Motions *in limine*] are 'designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions.'") (quoting *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013)).

Motions *in limine* further promote judicial efficiency by preserving the issues raised for appeal and eliminating the need for parties to renew their objections at trial, "just so long as the

movant has clearly identified the ruling sought and the trial court has ruled upon it." *United States v. Williams*, 81 F.3d 1321, 1325 (4th Cir. 1996); *see* FED. R. EVID. 103(a); *cf.* FED. R. EVID. 103(a) advisory committee's note to 2000 amendment (acknowledging that Rule 103(a) "applies to all rulings on evidence . . . including so-called 'in limine' rulings"). Rulings on these motions fall within the Court's "broad discretion." *Kauffman v. Park Place Hospitality Grp.*, 468 F. App'x 220, 222 (4th Cir. 2012); *see also United States v. Johnson*, 617 F.3d 286, 292 (4th Cir. 2010) (noting that evidentiary rulings fall within a trial court's discretion); *United States v. Wall*, No. CR SAG-19-0500, 2022 WL 1268061, at *1 (D. Md. Apr. 28, 2022).

## ARGUMENT

### I.    The Court Should Preclude The Defendant From Introducing Evidence And Argument Concerning Alleged Victim Negligence.

The Court should exclude any evidence and/or argument by the defense relating to alleged negligence or mismanagement by the victims, including "Top Gun" unitholders William LeBlanc and William Morris. Any evidence relating to victim negligence is irrelevant to the question of the Defendant's guilt and inadmissible as a defense.

It is no defense to fraud to "blame the victim," just as it is no defense to burglary charges that the victim left his front door unlocked. "The Fourth Circuit has held that evidence of a fraud victim's negligence or lack of diligence is not a defense" to a criminal fraud charge. *United States v. Gaver*, Crim. No. RDB-17-640, 2018 WL 3475455, at *2 (D. Md. Jul. 19, 2018) (citing *United States v. Colton*, 231 F.3d 890, 903 (4th Cir. 2000)). "The susceptibility of the victim of the fraud . . . is irrelevant to the analysis: 'If a scheme to defraud has been or is intended to be devised, it makes no difference whether the persons the schemers intended to defraud are gullible or skeptical, dull or bright.'" *Colton*, 231 F.3d at 903; *accord. United States v. Brown*, 820 F. App'x 191, 197

(4th Cir. 2020) ("A victim's perception of the scheme to defraud is irrelevant to whether the defendant intended to defraud the victim.")

Courts have routinely and consistently excluded such "blame the victim" evidence. *See Colton*, 231 F.3d at 903 (4th Cir. 2000); *United States v. Lindsey*, 850 F.3d 1009, 1014 (9th Cir. 2017) (holding that a lender's negligence "does not mean lenders can be victimized by intentional fraudulent conduct with impunity merely because the lenders were negligent, or even because the lenders intentionally disregarded the information in a loan application"); *United States v. Svete*, 556 F.3d 1157, 1165 (11th Cir. 2009) (en banc) ("[W]hatever role, if any, a victim's negligence plays as a bar to civil recovery, it makes little sense as a defense under a criminal statute that embraces 'any scheme or artifice to defraud.' A perpetrator of fraud is no less guilty of fraud because his victim is also guilty of negligence.") (internal citation omitted); *United States v. Allen*, 201 F.3d 163, 167 (2d Cir. 2000) (per curiam) ("The victim's negligence in permitting a crime to take place does not excuse the defendant from culpability for [the] substantive offense. . . ."); *United States v. Coyle*, 63 F.3d 1239, 1244 (3d Cir. 1995) ("The negligence of the victim in failing to discover a fraudulent scheme is not a defense to criminal conduct."); *United States v. Moore*, 923 F.2d 910, 917 (1st. Cir. 1991) ("[I]t is not a defense that the bank might have prevented its losses had it better internal controls or procedures."); *United States v. Winkle*, 477 F.3d 407, 418 (6th Cir. 2007) (approving the exclusion of an FDIC report that criticized the bank fraud victim's failure to detect a fraud scheme); *United States v. Thomas*, 377 F.3d 232, 243-44 (2d Cir. 2004) (affirming restrictions on cross of victim; rejecting defendant's argument that victim's foolishness vitiated defendant's fraudulent intent).

Because the issue of whether the victims were negligent is irrelevant, Britton-Harr should be precluded from introducing both evidence and argument designed to prove victim negligence.

-7-

As an example, Britton-Harr cannot present evidence or argue at trial that LeBlanc should have been more scrupulous in signing off on disbursements from the escrow account. Whether LeBlanc should have pressed Britton-Harr for documentation or proof that he was purchasing the aircraft is of no moment. Even if Britton-Harr could prove negligence on the part of LeBlanc, Morris, or the other "Top Gun" members, it would not be a defense to wire fraud.

## II. The Court Should Preclude Evidence And Argument Regarding Charging Decisions or Selective Prosecution of the Defendant.

The Government moves to preclude Britton-Harr from introducing evidence and argument regarding the Government's charging decisions. Britton-Harr may attempt to raise to the jury the fact that he is the only defendant in the court room, and question why the Government has not charged any other individuals with purported knowledge of the fraud. He may also argue that the case could or should have been brought as a civil matter, rather than criminally. The Court should preclude any such evidence or argument.

As a general matter, "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978). Claims based on the non-prosecution of other individuals are "not a defense on the merits to the criminal charge itself." *See United States v. Armstrong*, 517 U.S. 456, 463 (1996) (analyzing selective prosecution challenge). At trial, the jury will be required to determine whether the Government has proven beyond a reasonable doubt that Britton-Harr committed each of the wire fraud offenses charged in the Indictment. The question of whether some other individuals could also be charged with offenses related to the same or other conduct has no bearing on Britton-Harr's guilt or the factual determinations the jury will be asked to make. Evidence related to the Government's charging decisions would, therefore,

have no probative value at Britton-Harr's trial. *See* FED. R. EVID. 401. And even if it did, it would be substantially outweighed by prejudice. *See* FED. R. EVID. 403; *United States v. Henson*, MJM-21-cr-470, Pretrial Conference Transcript, ECF No. 160 (D. Md. July 3, 2024) ("Even if there was an ounce of probative value in [the government's charging decisions], it would be substantially outweighed by the risk of misleading or confusing the jury, unfairly prejudicing the Government's case and wasting time under Federal Rule of Evidence 403"). The Court should thus preclude any such evidence or argument.

**III.    The Defendant Should Be Precluded From Introducing Purportedly Self-Exculpatory Statements Without Testifying.**

Britton-Harr should not be allowed to introduce his own out-of-court statements without testifying. While the Defendant's out-of-court statements are not hearsay when offered against him by the Government, those statements are inadmissible hearsay when offered by the Defendant without testifying. *See United States v. Rich*, 2024 WL 2396706, at *5 (D. Md. May 23, 2024) (defendant's own exculpatory out-of-court statements barred as hearsay); *United States v. Davis*, 75 F.4th 428, 437 n.9 (4th Cir. 2023) ("To be sure, had the exculpatory firearm comment been introduced by the government at trial, it would not be hearsay under Rule 801(d)(2) (providing that statement by party-opponent is not hearsay). On the other hand, if Davis had sought to introduce the comment in the defense case, it would be hearsay and Rule 801(d)(2) would not apply.")

Moreover, the rule of completeness as codified in Federal Rule of Evidence 106 does not permit Britton-Harr to introduce purportedly self-exculpatory hearsay simply because the Government admits other statements of Britton-Harr through its witnesses. Precedent is clear: Rule 106 "does not . . . render admissible the evidence which is otherwise inadmissible under the hearsay rules.'" *Davis*, 75 F.4th at 436 (citations omitted). Neither does "the rule of

completeness 'require the admission of self-serving, exculpatory statements made by a party which are being sought for admission by that same party.'" *United States v. Hassan*, 742 F.3d 104, 134 (4th Cir. 2014) (quoting *United States v. Lentz*, 524 F.3d 501, 526 (4th Cir. 2008)).

Accordingly, the Court should preclude the Defendant from introducing purportedly self-exculpatory statements without testifying.

**IV.    The Defendant Should Be Required to Provide Notice if He Intends to Pursue an "Advice of Counsel Defense and Offer Proof That He Can Meet the Elements of that Defense.**

The advice of counsel defense must be based on a defendant's good faith reliance on his attorney's advice, and requires that the defendant fully disclosed the facts to his attorney. *United States v. Painter*, 314 F.2d 939, 943 (4th Cir. 1963); *see also United States v. Martorano*, 767 F.2d 63, 66 (3d Cir. 1985) ("a defense based on good faith reliance on an attorney's advice requires full disclosure to counsel of all material facts . . . ."). The defense is meant to be available only to those who, after full and honest disclosure of the material facts surrounding a possible course of action, seek and obtain the advice of counsel on the potential legality of their actions. *United States v. Traitz*, 871 F.2d 368, 382 (3d Cir. 1989). ("The defense is not designed to insulate illegal conduct. Rather, the basis for the defense is that, in relying on counsel's advise, a defendant lacked the requisite intent to violate the law.") (internal quotations omitted); *see also United States v. Polytarides*, 584 F.2d 1350, 1353 (4th Cir. 1978). "[C]onsultation with lawyer confers no automatic immunity from the legal consequences of conscious fraud." *Painter*, 314 F.2d at 943 (citing *United States v. Schaefer*, 299 F.2d 625, 639 (7th Cir., 1962)).

The evidentiary predicate for the defense is that the defendant: (1) consulted an attorney in good faith for the purpose of securing advice of counsel; (2) made full and honest disclosure of all the facts; and (3) in good faith, honestly followed counsel's advice, relying on it and believing

it to be correct.  *See United States v. Colasuonno*, 697 F.3d 164, 181 (2d Cir. 2012) (citing

*Williamson v. United States*, 207 U.S. 425, 453 (1908)); *accord United States v. v. Beech-Nut*

*Nutrition Corp.*, 871 F.2d 1181, 1194 (2d Cir. 1989).  "Each requirement must be satisfied."

*Colasuonno*, 697 F.3d at 181.

A party asserting that he relied upon the advice of counsel waives the attorney-client

privilege with respect to all communications to or from counsel concerning the matters for which

counsel's advice was sought.  *United States v. Cohn*, 303 F. Supp. 2d 672, 681 (D. Md. 2003);

*United States v. Bilzerian*, 926 F.3d 1285, 1292 (2d Cir. 1991); *see generally Rhone-Poulenc Rorer*

*v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994).

In his recent motion to suppress evidence obtained from an electronic search warrant,

Britton-Harr asserted that "AeroVanti had retained attorneys to draft nearly all documents

significant to this prosecution."  ECF No. 44 at 2.  He further explained that AeroVanti "retained"

counsel "to guide [the] company in many, if not most, of the issues subject to this prosecution."

*Id*. at 2-3.

The Government is not clear based those representations whether Britton-Harr intends to

pursue an advice of counsel defense or to simply skirt around the edges of that defense to suggest

to the jury that Britton-Harr's conduct was known to and endorsed by his counsel at the time.

Britton-Harr should be required to provide notice of his intentions.  As noted above, in order to

properly raise the defense, Britton-Harr must be able to prove to the Court that each element of the

defense can be met.  Moreover, a proper assertion of the defense would waive any claim of

attorney-client privilege, affording the Government the opportunity to interview Britton-Harr's

former counsel and review relevant communications.  To avoid the potential for waste of time and

jury confusion should Britton-Harr raise a defense of reliance on advice of counsel in opening

statement or mid-trial, the Government respectfully requests that the Court order Britton-Harr to

provide notice of his intentions and make an offer of proof as to each element of the defense prior

to presenting any evidence or argument to the jury.

## **CONCLUSION**

For the reasons explained above, the Government respectfully seeks the following *in*

*limine* and/or preliminary rulings from the Court:

1. To preclude the Defendant from introducing evidence and argument concerning alleged negligence or mismanagement by the victims, including "Top Gun" unitholders William LeBlanc and William Morris;

2. To preclude evidence and argument regarding charging decisions or selective prosecution of the Defendant;

3. To preclude the Defendant from introducing purportedly self-exculpatory statements without testifying; and

4. To require that the Defendant provide notice if he intends to raise an "advice of counsel" defense and present an offer of proof concerning the elements of the defense before presenting argument or evidence on that subject before the jury.

Respectfully submitted,

Kelly O. Hayes
United States Attorney

Lorinda I. Laryea
Chief, Fraud Section
United States Department of Justice

     */s/*                              
Ari D. Evans
Assistant United States Attorney
36 South Charles Street, 4th Floor
Baltimore, Maryland 21201

Ariel Glasner
Trial Attorney
Department of Justice, Criminal Division

Fraud Section
1400 New York Avenue, N.W.
Washington, D.C., 20005

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 18, 2026, I caused a copy of the foregoing motion

to be filed electronically with the Court and counsel of record using the CM/ECF system .


  _/s/_____

Ari D. Evans
Assistant United States Attorney