

# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
### OFFICE OF THE CLERK

Catherine M. Stavlas, Clerk of Court
David E. Ciambruschini, Chief Deputy

Reply to Northern Division Address

July 2, 2026

LETTER TO JUDGE ADAM B. ABELSON

RE:     *United States of America v. Patrick Tormay Britton-Harr*
        Criminal No. ABA-25-143

Dear Judge Abelson:

I am writing to inform you of a report from non-chambers court staff[1] about the conduct of the assigned courtroom deputy clerk during the jury trial that was held in this matter from May 18, 2026, until June 3, 2026.  Following the conclusion of the trial, court staff reported to me alleged conduct by the assigned courtroom deputy clerk that may have impacted your trial. The courtroom deputy is no longer employed with the U.S. District Court for the District of Maryland for unrelated reasons; as such, she has not been asked to respond to these allegations.  The following information is based on what court staff shared that they had observed or heard from the courtroom deputy.

The first reported incident concerned communication made to the jurors regarding the Defendant's father.  Defendant's father reportedly attended trial often and observed the proceedings from the courtroom gallery.  During various breaks, he would sometimes speak with the courtroom deputy.  During one interaction, Defendant's father purportedly told the courtroom deputy that she was the best "cattle herder" that he ever saw, presumably referring to her management of the proceedings. According to court staff, the courtroom deputy apparently took offense to this comment and shared it with court staff along with a statement that she would no longer be speaking to Defendant's father.

On or about that same day, the jurors reported to the courtroom deputy that they almost shared an elevator with Defendant's father when reporting to the courtroom

---

[1] For the remainder of this letter, "court staff" refers to non-chambers court staff in every instance.

Northern Division • 4228 U.S. Courthouse • 101 W. Lombard Street • Baltimore, Maryland 21201• 410-962-2600
Southern Division • 200 U.S. Courthouse • 6500 Cherrywood Lane • Greenbelt, Maryland 20770 • 301-344-0660

**Visit the U.S. District Court's Website at www.mdd.uscourts.gov**

from the courthouse lobby.[2]  In response, the courtroom deputy reportedly shared with the jurors the comment that Defendant's father made referring to the courtroom deputy as a "cattle herder."  The courtroom deputy later shared this incident with court staff.  According to court staff, it is unclear whether the courtroom deputy also shared that she took offense to the comment; however, court staff felt it was apparent the courtroom deputy took offense to the comment and felt that sentiment may have been conveyed to the jurors, too.

In another incident reported to me, the courtroom deputy relayed to the Court a question by a juror regarding the definition of wire fraud.  Before sharing this question with the Court, court staff informed me the courtroom deputy reported the interaction to court staff.  When sharing the description of the incident to court staff, the courtroom deputy reported that one juror stated that they were not talking about the case in the deliberation room.  According to court staff, the courtroom deputy told court staff that, in response to this statement, she told the juror something to the effect of "[n]o one will know what goes on behind these four walls."

The courtroom deputy then reported the juror's question about the definition of wire fraud to the Court, and the parties discussed the incident on the record.  I have reviewed the transcript of this discussion.  When the Court asked the courtroom deputy to recite the interaction on the record, her description did not appear to include some of the information above that she had ostensibly relayed to court staff.

In another reported incident on or about day seven of the trial, court staff observed the courtroom deputy exiting the jury room holding a piece of paper in her hand with names, phone numbers, and email addresses in different colored pen marks. Court staff reported the courtroom deputy remarked to court staff "[t]hey're done," ostensibly referring to the jurors.  The courtroom deputy reportedly shared with court staff that the jurors asked her if they would be permitted to attend the sentencing if they found Defendant guilty.  The courtroom deputy purportedly responded that they could attend, but that it would not be for a few months.  According to court staff, the courtroom deputy stated that she would contact them, and the jurors then provided her with a piece of paper with the contact information for all fifteen jurors and alternates. This is reportedly the piece of paper the courtroom deputy was holding when she exited the jury room.

In another reported incident, two jurors told the courtroom deputy that they had a "crush" on one of the Government's witnesses.  The courtroom deputy purportedly

---

[2] According to court staff, the jurors reported to the courtroom deputy that they recognized Defendant's father as he approached the elevator.  One of the jurors told Defendant's father that they should not ride the elevator with him.  Defendant's father did not attempt to enter the elevator with the jurors.

shared this with court staff. According to court staff, she did not state whether she replied to this comment.

Court staff reported another incident during the trial where the courtroom deputy said that the jurors were complimenting her figure. In response, the courtroom deputy purportedly told the jurors she engages in intermittent fasting, and that she wrote a book on the topic. Court staff does not know if she encouraged the jurors to purchase her book.

In another reported incident, on the morning before closings, a juror purportedly told the courtroom deputy "I told my husband that when we're done today, I'm not going back to work until Monday." According to court staff, the courtroom deputy relayed this comment to court staff. Court staff understood this comment to indicate that the juror believed a verdict would be reached shortly after closings. On or about the same day, a juror purportedly told the courtroom deputy that she wanted to hold up a sign that said "we're done" during Defendant's closing argument. The courtroom deputy reported this comment to court staff. According to court staff, the courtroom deputy did not state whether she replied to either of these comments.

Finally, according to court staff, following the conclusion of the trial, the courtroom deputy reportedly told court staff that she permitted each juror to take their notebooks home at the end of deliberations in violation of court policy.

Sincerely yours,

David E. Ciambruschini

David E. Ciambruschini
Chief Deputy Clerk