**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| | * | **Crim. No. ABA-25-143** |
| **v.** | * | |
| | * | |
| **PATRICK BRITTON-HARR,** | * | |
| | * | |
| **Defendant.** | * | |
| | ***** | |

**UNITED STATES' RESPONSE IN OPPOSITION**
**TO DEFENDANT'S MOTION FOR NEW TRIAL**

Defendant Patrick Britton-Harr's Motion for New Trial (ECF No. 138) asks the Court to order a new trial because of purported prejudicial misconduct by "court personnel and jurors." ECF No. 138 at 1, 10. But the sole basis for Defendant Britton-Harr's motion is a letter submitted to the Court that relates anonymous sources describing supposed conversations between a courtroom deputy clerk and the jurors. The letter contains extensive hearsay, supposition, and speculation. *See* ECF No. 133-1. It cannot, on its own, justify overturning the jury's guilty verdict and granting Defendant Britton-Harr a new trial.

Without waiving any argument that the alleged interactions were innocuous, nonprejudicial and/or did not concern a matter pending before the jury, the government submits that a post-trial evidentiary hearing is necessary to inquire further into these allegations *before* the government addresses the merits of Defendant's motion or the Court rules upon it. Because "[w]e do not know from this record, nor does the [defendant] know, what actually transpired, or whether the incidents that may have occurred were harmful or harmless," *Remmer v. United States*, 347 U.S. 227, 229 (1954), the government requests that the Court order an evidentiary hearing to determine the

relevant facts. In the event the Court does not concur with the government's request, the government submits that Defendant Britton-Harr's motion must be denied as insufficient.

## I. Background

Defendant Britton-Harr was charged by Indictment with six counts of wire fraud in connection with a scheme to defraud customers of his company, AeroVanti, of over $15 million. During a two-and-a-half-week jury trial, the government presented overwhelming evidence of Defendant Britton-Harr's guilt through the testimony of victims, a company employee, a forensic accountant, the defendant's business attorney, and others, as well as through the admission of voluminous evidence such as the Defendant's emails and text messages, company marketing materials, and financial records. On June 3, 2026, the jury returned a verdict of guilty on all counts.[1]

Four weeks after the return of the jury's verdict, the Chief Deputy Clerk of the U.S. District Court for the District of Maryland submitted a letter to the Court containing information reported by court staff regarding the courtroom deputy clerk (CRD) assigned to assist during the jury trial in this matter.[2] ECF No. 133-1. The Court promptly notified the parties of the letter. ECF No. 133. According to the Chief Deputy Clerk's letter, court staff, who are not identified, reported several incidents involving the CRD. ECF No. 133-1 at 1. According to the letter, the court staff apparently learned of these incidents from the CRD during the May-June trial, when she reportedly shared

[1] The Court initially set sentencing for August 26, 2026, but has continued sentencing in light of the instant motion. ECF Nos. 132, 137.

[2] According to the Chief Deputy Clerk's letter, the CRD is no longer employed by the District Court for the District of Maryland for unrelated reasons and, therefore, she was not asked to respond to the allegations made against her by court staff. ECF No. 133-1 at 1.

the incidents. *Id.* The letter did not explain why the Court had not been alerted by court staff to the allegations regarding the CRD's alleged conduct when they purportedly occurred.

Defendant Britton-Harr subsequently filed the instant motion for a new trial (ECF No. 138) pursuant to the briefing schedule ordered by the Court. The motion claims a new trial is warranted "due to the misconduct of court personnel and jurors," and seeks to have "a hearing on paper," asking that the Court rule on his motion without an evidentiary hearing. *See id.* at 1, 10. In the alternative, "if an evidentiary hearing is necessary," Defendant Britton-Harr requests "testimony from each individual juror, all court staff that either submitted reports or overheard comments from the courtroom deputy, [the CRD], the personal notes the jurors were wrongfully permitted to leave the courthouse with and for any other relevant evidence that may exist." *Id.* at 10–11.

## II. The Court Should Order a Factual Inquiry into the Chief Deputy Clerk's Letter Before Making a Preliminary Ruling.

### A. The Applicable Legal Standard Favors an Evidentiary Hearing.

In *Remmer*, 347 U.S. at 228, the Supreme Court addressed a factual scenario involving post-verdict allegations of third-party contact with a juror: after the jury had returned a guilty verdict against the defendant, he learned via a news report that a third party had communicated with a juror. The juror had reported the contact to the court, but the court did not inform defendant; instead, the court informed the prosecution, which investigated and concluded that the statement was made in jest. *Id.* After learning of the incident, the defendant filed a motion for new trial and requested a hearing to determine the facts; the district court denied both requests and the appellate court upheld that determination. *Id.* at 229. The Supreme Court remanded to the district court with directions to conduct a hearing to determine if the incident was harmful or not, concluding: "We do not know from this record, nor does the petitioner know, what actually transpired, or whether the incidents that may have occurred were harmful or harmless. . . . The trial court . . . should

determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate." *Id.* at 229–30.

Likewise, in *Barnes v. Joyner*, 751 F.3d 229, 232 (4th Cir. 2014), the Fourth Circuit relied on *Remmer* to hold that a failure to investigate an allegation of third-party influence on a jury was error. In *Barnes*, it was revealed that while the jurors were considering the death penalty during sentencing, one of the jurors discussed the matter with her pastor and relayed that conversation to the other jurors; the state trial court denied the defendant's motion for mistrial and request to question the jury, which the state supreme court upheld. *Id.* at 234–35. After filing a habeas petition, which the district court denied without a hearing, the defendant, citing *Remmer*, appealed to the Fourth Circuit. *Id.* at 237, 239. The appellate court reversed the state supreme court with directions to the district court to hold an evidentiary hearing to determine if the alleged incident of juror interference "had a substantial and injurious effect or influence on the jury's verdict." *Id.* at 243 (a hearing must be conducted "when genuine concerns of improper juror contact arise" post-verdict) (then quoting *Smith v. Phillips*, 455 U.S. 209, 215 (1982) ("the remedy for allegations of juror partiality is a hearing.")).

The Fourth Circuit in *Barnes* further observed that *Remmer* "creat[ed] . . . a rebuttable presumption of prejudice applying to communications or contacts between a third party and a juror concerning the matter pending before the jury." *Barnes*, 751 F.3d at 241 (citing *Remmer*, 347 U.S. at 229). That is, *Remmer* created a presumption of prejudice to the moving party, which the nonmoving party (the government) must rebut to avoid a new trial. But "not every allegation of an unauthorized communication between a juror and a third party will trigger the *Remmer* presumption and its corresponding hearing requirement." *Barnes*, 751 F.3d at. at 244. Indeed, "the *Remmer* presumption is not one to be casually invoked." *Id.* (cleaned up). It is only triggered *after*

the party attacking the verdict shows that the communications or contacts between a juror and a third party "'were more than innocuous interventions.'" *Id.* at 245 (quoting *United States v. Cheek*, 94 F.3d 136, 141 (4th Cir. 1996) (characterizing this as a "minimal standard"). The court further explained in *Barnes* that the third-party contact must be related to "the matter before the jury," such as, e.g., where a juror was offered a bribe during trial, or a bailiff informed the jury that the defendant was "wicked" and guilty as charged. *Id.* at 245.

**B. The Chief Deputy Clerk's Letter is Insufficient to Trigger the *Remmer* Presumption, and An Evidentiary Hearing is Required to Determine the Extent of Extrajudicial Juror Contact That May Have Occurred.**

Because the facts surrounding the anonymous allegations contained in the letter are unknown, it is not possible to assess whether the post-verdict allegations of extrajudicial juror contact at issue here were more than innocuous interventions or that they were harmful.[3] As such, Defendant Britton-Harr has not—and cannot on the current record—show that the *Remmer* presumption applies. To proceed further requires an evidentiary hearing to determine what transpired and, if incidents did occur between the CRD and the jury, whether they related to the matter before the jury, whether they were harmful or harmless, whether they involved all members of the jury or certain members of the jury, whether they caused any impact upon any or all of the jurors, and whether that impact was in fact prejudicial to the defendant. *See Remmer*, 347 U.S. at 229–30; *Barnes*, 751 F.3d at 243. Before the facts are known, the government cannot respond on the merits to the Defendant's motion. Therefore, the government requests that the Court order an

[3] On their face, certain of the incidents described in the Chief Deputy Clerk's letter appear innocuous, such as: (1) the jurors reportedly complimenting the CRD on her figure and the CRD apparently mentioning that she engages in intermittent fasting, and (2) the CRD allegedly permitting the jurors to take their notebooks from deliberations home *after* the verdict was rendered. ECF No. 133-1 at 3.

evidentiary hearing to determine the extent of the extrajudicial juror contact that may have occurred.

Defendant Britton-Harr's motion assumes that the purported communications between the CRD and the jurors reported in the Chief Deputy Clerk's letter occurred exactly as written. *See, e.g.*, ECF No. 138 ("In the case herein, the conversations were between a juror and court personnel, specifically the courtroom deputy."). However, the Chief Deputy Clerk's letter consists only of hearsay within hearsay within hearsay (three levels of hearsay). That is, the letter submitted to the Court claims that the CRD told anonymous members of the court staff about conversations she had with jurors (first level of hearsay). The anonymous members of the courtroom staff then reported what the CRD shared with them to the Chief Deputy Clerk (second level of hearsay). And the Chief Deputy Clerk then submitted to the Court a letter describing what the court staff told him about what the CRD told court staff about her conversations with the jurors (third level of hearsay). The letter offers no statements from any person who was present for the purported communications between the CRD and the jurors, nor provides any corroboration that the incidents described in the letter occurred. Even if the Chief Deputy Clerk's letter accurately portrayed what was relayed by the second level of hearsay, without a hearing there is no way to ensure that this extended game of telephone did not result in important distortions that would affect whether the *Remmer* presumption would be triggered.

Three levels of hearsay and no corroborating statements or materials does not constitute "substantial" evidence of misconduct. Nor does it demonstrate "more than a reasonable possibility that the jury's verdict was influenced." The letter merely raises the *possibility* of communications between the CRD and the jury that *may* have influenced the jury's verdict, nothing more. As both *Remmer* and *Barnes* dictate, to properly assess whether a new trial may be warranted first requires

an evidentiary hearing to determine what transpired. *See Remmer*, 347 U.S. at 229-30; *Barnes*, 751 F.3d at 243. Only once such an evidentiary hearing is held would the government be prepared to address whether anything that may have occurred was harmful or harmless, whether it related to the matter before the jury, whether it involved all members of the jury or certain members of the jury, whether it caused any impact upon any or all of the jurors, and whether that impact was in fact prejudicial to the defendant.

### C. The Court Should Limit Any Juror Testimony at the Hearing to Protect Deliberations, and Order Relevant Court Staff to Testify.

Should the Court order an evidentiary hearing, the government further requests the Court order the Clerk's Office to produce the identities of the court staff who reported the alleged incidents involving the CRD and then order the relevant court staff to appear for testimony at the evidentiary hearing. With respect to the trial jurors and the former CRD, the government defers to the Court as to whether it will *sua sponte* order their appearance at the evidentiary hearing or prefers that the parties subpoena their testimony and the production of any relevant records. The government also will confer with counsel for Defendant Britton-Harr regarding potential witnesses.

At an evidentiary hearing, the government anticipates that *first*, the CRD and the relevant court staff will be subject to the Court's and the parties' examination. Should their respective testimony substantiate interactions alleged in the Chief Deputy Clerk's letter, the government anticipates that the Court and the parties will *then* examine the trial jurors (or at least those that were a part of the alleged interactions with the CRD). Though the scope of the examination of the CRD and court staff may broadly include any questions relevant to the issue at hand—namely, the occurrence and nature of the interactions alleged in the Chief Deputy Clerk's letter—during an inquiry into the validity of a verdict, the permitted scope of a trial juror's testimony is extremely

narrow under Fed. R. Evid. 606(b). Trial jurors are *prohibited* from testifying about "any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment." Fed. R. Evid. 606(b)(1) (emphasis added). The sole exceptions to this broad prohibition concern testimony that: "(A) extraneous prejudicial information was improperly brought to the jury's attention; (B) an outside influence was improperly brought to bear on any juror; or (C) a mistake was made in entering the verdict on the verdict form." Fed. R. Evid. 606(b)(2).

Under this Rule, a post-trial inquiry of jurors into "matters internal to the jury" or the effect of any alleged premature deliberations is prohibited. *See, e.g.*, *Barnette v. United States*, No. 12-cv-327, 2013 U.S. Dist. LEXIS 100618, at *5-6 (W.D.N.C. July 18, 2013) (prohibiting inquiry into juror's pre-deliberation remarks); *United States v. Baker*, 899 F.3d 123, 132 (2d Cir. 2018) (Rule 606(b) prohibits jurors from impeaching their verdict by testifying about the effect of premature deliberations where the jury was alleged to have discussed the case repeatedly prior to receiving the case from the court); *United States v. Sabhnani*, 529 F. Supp. 2d 384, 394 (E.D.N.Y. 2008) (same). What is permitted—testimony regarding "extraneous prejudicial information"—concerns "information *other* than the information that the jury received from the Court's instructions on the law, the factual evidence presented in this case through witness testimony from the witness stand, and factual evidence presented in the case through exhibits properly admitted at trial . . . ." *United States v. Siegelman*, 467 F. Supp. 2d 1253, 1265 (M.D. Ala 2006); *see also Barnes*, 751 F.3d at 245 (describing "extraneous prejudicial information" as "information that was not admitted into evidence but nevertheless bears on a fact at issue in the case."). Likewise, testimony regarding "outside influence" refers to "attempts to influence a juror's thoughts about the case or the outcome of the jury's deliberations by anyone other than another juror during the

jury deliberations." *Siegelman*, 467 F. Supp. 2d at 1265; *see also Barnes*, 751 F.3d at 245 (referring to "an outside influence upon the partiality of the jury, such as private communication, contact, or tampering with a juror.") (internal citation omitted).

The Supreme Court has cited "a radio newscast or a newspaper account" as examples of potentially "extraneous prejudicial information" and "a threat to the safety of a member of [the juror's] family" as an example of an outside influence potentially improperly brought to bear upon a juror. *See Tanner v. United States*, 483 U.S. 107, 122-23 (1987); *see also Remmer*, 347 U.S. at 229 (an external influence, is "any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury . . ."); *Barnes*, 751 F.3d at 247 (juror's communication with pastor constituted "contact or communication with a third party"); *Jefferson v. Terry*, 490 F. Supp. 2d 1261, 1347-48 (N.D. Ga 2009) (juror reading aloud a random passage from the Bible during the penalty phase of the defendant's trial constituted "external" information but did not "improperly influence" the jurors); *Siegelman*, 467 F. Supp. 2d at 1266 (extraneous information improperly brought to the jury's attention included a copy of the second superseding indictment and information concerning the foreperson's obligation to preside over the jury's deliberations and to give every juror a fair opportunity to express his or her views, both obtained from the court's website; bribes or threats to jurors cited as examples of "outside influence improperly brought to bear upon a juror"); *Georges v. Government of Virgin Islands*, 986 F. Supp. 323, 326, 328 (D. VI 1997) (post-verdict hearing warranted where juror wrote letter indicating jury had considered media reports in reaching verdict.).

To the extent that any of the allegations described in the letter occurred as stated, the government submits that under Rule 606(b), jurors will be prohibited from testifying or being questioned about many of them, including that: (1) certain jurors had a "crush" on one of the

government's witnesses; (2) jurors reportedly complimented the CRD on her figure; (3) a juror purportedly told the CRD on the morning before closings that "I told my husband that when we're done today, I'm not going back to work until Monday" and that on or about the same day, the same juror purportedly told the CRD that "she wanted to hold up a sign that said 'we're done' during Defendant's closing argument"; and (4) the CRD allegedly permitted the jurors to take their notebooks from deliberations home after the verdict was rendered. ECF No. 133-1 at 2-3. None of those alleged incidents as described on the face of the letter relate to "extraneous prejudicial information . . . brought to the jury's attention" or to "an outside influence . . . improperly brought to bear on any juror." Fed. R. Evid. 606(b)(2). Jurors should also be prohibited under Fed. R. Evid. 606(b) from producing their personal notes from the trial. *See* Fed. R. Evid. 606(b); *Thomas v. Ford Motor Co.*, 244 Fed. App'x 535, 538 (4th Cir. 2007) (suggesting that it would be improper under Rule 606(b) for party to challenge a verdict on the basis of what jurors wrote); *Cheek*, 94 F.3d at 144 (prohibiting trial court from considering testimony about juror's "mental processes" in inquiry into validity of verdict).

**III. If the Court Does Not Order an Evidentiary Hearing, Defendant's Motion Should be Denied.**

If the Court declines to hold an evidentiary hearing, the government submits that Defendant Britton-Harr's motion must be denied as insufficient. Rule 33 authorizes the Court to grant a new trial if "require[d]" in "the interest of justice." Fed. R. Crim. P. 33(a). The Fourth Circuit has consistently "emphasized that a court should exercise its discretion to grant a new trial sparingly." *United States v. Gentner*, 177 F.4th 519, 527 (4th Cir. 2026) (cleaned up). The interest of justice standard requires a district court to grant a motion for a new trial only "where it is demonstrated that the fundamental fairness or integrity of the trial result is substantially in doubt." *United States v. Jennings*, 438 F. Supp. 2d 637, 642 (E.D. Va. 2006), *aff'd*, 496 F.3d 344 (4th Cir. 2007). Fed.

R. Crim. P. 52(a) makes clear that any error not affecting substantial rights "must be disregarded." Further, "[t]he Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases." *Marshall v. Jerricho, Inc.*, 446 U.S. 238, 242 (1980). To demonstrate a due process violation because of alleged judicial bias, a claimant must show either actual bias or an appearance of bias on the part of the tribunal. *Id*. at 243.

The Defendant's motion for a new trial is insufficient on its face, and falls well short of the high bar set for disrupting a jury's verdict and granting a new trial. The Defendant has not presented any *actual* evidence demonstrating prejudice. Instead, Defendant, in seeking a ruling on the papers, relies solely on unsubstantiated, anonymous allegations and the Defendant's own presumptions from accepting those allegations as true. Defendant acknowledges in his motion the substantial leaps required to assume prejudice based on the present record. *See e.g.* ECF No. 138 at 9 ("the courtroom deputy here . . . *seemingly* made comments *potentially* influencing the deliberation process" (emphases added)).

For over two weeks, the jury in this matter heard substantial evidence of the Defendant's guilt, including documentary evidence and witness testimony. The Defendant himself took the stand and his testimony was roundly contradicted by every other witness at trial, including by his own business attorney at AeroVanti. After hearing the voluminous evidence, the jury returned a verdict of guilty on all counts. The Defendant now asks the Court to throw out that verdict based simply on the allegations contained within the Chief Deputy Clerk's letter. But, as stated throughout this response to the Defendant's motion, by relying on that letter alone the Defendant has failed to cast substantial doubt on the fundamental fairness or integrity of the trial. The Court cannot find that the *Remmer* presumption applies, let alone that the Defendant suffered any prejudice warranting a new trial when no corroborated facts have been established. The Fourth

Circuit has emphasized granting a new trial "sparingly." Here, the jury's guilty verdict should not be disturbed, particularly without an evidentiary hearing. [4]

## IV. CONCLUSION

For the reasons stated above, the government respectfully requests that the Court order an evidentiary hearing to assist the parties and the Court in determining what did or did not happen between the CRD and the jury in this matter. An evidentiary hearing will allow the Court to ascertain whether, in fact, there were interactions between the CRD and the jury, and if so, whether these were mere innocuous interventions or more substantial, and whether any interactions between the CRD and the jury may have been prejudicial to the Defendant. In the event the Court denies the government's request for an evidentiary hearing, the government submits for the reasons stated above that Defendant Britton-Harr's motion for a new trial be denied.

Dated: August 13, 2026

Respectfully submitted,

Kelly O. Hayes
United States Attorney

Lorinda I. Laryea
Chief, White Collar and Corporate Enforcement Section
United States Department of Justice

*/s/*____________________________
Ari D. Evans
Assistant United States Attorney
36 South Charles Street, 4th Floor
Baltimore, Maryland 21201

[4] In asserting that Defendant's motion is insufficient because the anonymous allegations contained in the letter are not substantiated, the government does not—and cannot—address whether the alleged interactions were innocuous, nonprejudicial and/or did not concern a matter pending before the jury. Should the Court agree with the government's request to order an evidentiary hearing, the government will seek the opportunity to further brief the Court as to these specific issues provided, of course, that further briefing is warranted.

Ariel Glasner
Trial Attorney
Department of Justice, Criminal Division
White Collar and Corporate Enforcement Section
1400 New York Avenue, N.W.
Washington, D.C., 20005

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 13, 2026, I caused a copy of the foregoing motion to be filed electronically with the Court and counsel of record using the CM/ECF system.

_*/s/*___________________________
Ariel Glasner
Trial Attorney